Hawkins, J.,
delivered the opinion of the Court.
It appears, from the record in this cause, that Henry Wirt died in Fayette County, Tennessee, in December, 1847, possessed of a considerable estate, consisting, principally, of land and slaves; leaving a Will, which was subsequently .probated. The testator left his wife, Sarah, and three children, to-wit: his sons, John and Finis E., and his daughter, Mrs. Appleherry, surviving him. By his Will, he appointed his said sons, and his son-in-law, Appleherry, his executors. His son, Finis E., and his said son-in-law, Appleherry, qualified. Appleherry died. Sarah, the widow, died intestate, in 1858, and complainant, Finis E., was appointed her administrator. *123 The testator’s son, John, has also died intestate, leaving two children; and now the said Einis E. Wirt, brings this bill, seeking a construction of two clauses of said Will, a settlement of his said executorship of his father’s Will, and his said administration of his mother’s estate.
Said testator, by the first clause in his Will, directed the payment of his debts and funeral expenses.
By the second clause, he directed, that his wife retain in her possession, during her life or widowhood, all his estate, real and personal, or so much thereof as she might deem necessary; and should there be any she did not desire to keep, the same was to be sold, and the proceeds equally divided between his three children.
The third clause is as follows :
“After the death of my beloved wife, it is my express wish and desire, that the land on which I now live, be equally divided, as to acres, between my son, Finis E. Wirt, and my daughter, Sara,h Appleberry, and her children; and that the said Sarah shall receive, on her part of the land, the mansion-house, and all other contingencies and buildings. And that full justice may be done, it is my wish, that my son, John Wirt, may be made equal with my other two children, in the division of the land, out of money he now owes me.”
The fourth clause is as follows:
“ I also give to my daughter, Sarah Appleberry, all the farming tools and instruments of husbandry, of every sort, that may be in possession of my wife at her death.”
The first part of the fifth clause, is as follows:
“I also give to the said Sarah, a certain negro girl, by the name of Betsy, or Betty, as she is usually called; *124 but not to get possession until after nay wife’s death, unless at her option.”
Now, it is my express wish and desire, that after the death of my wife, that the residue of my estate, not hereafter disposed of, be equally divided between my three children, viz.: John Wirt, F. E. Wirt, and Sarah Apple-berry, with the express provision, that each of said children account for the respective amounts they are now due me, for which I now hold their notes.”
The testator then goes on to limit the estate given to his son, John, to a mere use for life, and to provide that, at his death, the property, the use of which is given to him for life, shall be equally divided between his daughters, Caroline and Catharine.
The testator then proceeds to make the following bequests, to-wit:
“To the American and Foreign Bible Society, $200. To the Baptist Board of Foreign Missions, $100. To the Western and Southern India Mission Association, $100; and to the Baptist Convention of the Western District of Tennessee, $100 — making, in the aggregate, the sum of $500.
The first question arises upon the third clause in the Will. ■ It seems that the value of each of the shares of Finis E. Wirt and Mrs. Appleberry in the land, at the death of Mrs. Wirt, largely exceeded the amount of the indebtedness of John Wirt to the testator.
The only question arising upon this clause which we are called upon to determine, and upon which we express any opinion, is this: The indebtedness of John Wirt to the testator being insufficient to make him equal with *125 the devizees of the land, is he, under the Will, entitled to be made equal out of the estate of the testator not specifically devised or bequeathed? And we think he is. The question is purely one of intention. What was the intention of the testator, is to be gathered from the whole instrument, or, as some writers express it, from the “four corners” of the Will; and when ascertained, it must prevail, unless in contravention of some established rule of law. After devising his land to two of his children, the testator says: “And that full justice may be done, it is my wish that my son, John Wirt, may be made equal with my other two children, in the division of the land, out of money he now owes me.” Thus, not only clearly expressing the wish and intention to make his three children equal under this clause of the Will, but also declaring the motive by which he was actuated, to-wit: a wish that full justice might be done. Equality between the objects of his bounty, under this clause of the Will, was the primary intention of the testator. That his son John should be made equal with his other two children out of what his said son was owing him, was secondary only; and the prime object of the testator will not be defeated, and what he himself declares would be injustice done, because of a misapprehension of the testator, or merely because the particular fund, or assets out of which he directed the legacy should be paid, was insufficient, whilst there remains a sufficiency of assets, not specifically devised, to make up the legacy.
The testator gives to his daughter something more than to either of his sons; but, as between his sons, John and Einnis E., he clearly intended to preserve *126 perfect equality in the disposition of his estate, giving to each an equal share of his estate. But, when we undertake to carry out and give effect to the intentions of the testator, we meet with serious difficulties. The testator directs that his land he equally divided in quantity, between his son, Finis E., and his daughter, Sarah; and that his daughter shall receive, upon her part of the land, the mansion house and other buildings. This, of course, estimating the value of the buildings, would render the portion allotted to his daughter, Sarah, more valuable than the portion allotted to his son, Finis E.; yet he directs, in order that full justice may be done, that his son, John, be made equal with his other children. Thus assuming their shares are of equal value.
In order to give effect to the Will, as nearly in accordance with the intention of the testator, as may be, and presuming equality between testator’s sons, we construe said clause so as to give to testator’s son, John, in addition to his indebtedness to the estate, out of the residue of the estate, after paying the specific legacies, a sufficiency to make his share, under this clause of the Will, equal to the value of the portion of the land allotted to Finis E.
It is stated in the record, that the indebtedness of John Wirt to the testator, consisted in the joint notes of John and F. E. Wirt. The Chancellor directed that John should only be charged with one-half the same. This, we think, is erroneous. ' John was indebted to his father the whole amount of the notes; and the fact, that they were the joint or partnership notes of John and Finis E., made them no less the debts of John, to *127 Ms father. It is insisted, that under a settlement of matters between John and Finis E., John was to pay the whole amount of the joint indebtedness to their father; but how this may he, it is not now necessary to inquire. In taking the account hereafter, to ascertain the amount due John, under the third clause in the Will, in addition to his indebtedness to his father, he will he charged with the whole amount for which he was liable; and in making the distribution directed, under the residuary clause of the Will, unless some reason shall appear to the contrary, Finis E., will he charged in John’s favor, with one-half the amount of the debts jointly owing by them to the testator, and with which John may be charged, as above directed.
The next question arises upon the construction and effect to be given to the 5th clause of the Will. It appears from the record, that, before the death of the testator’s wife, and while the girl, Betty, remained in her possession, under the Will, Betty ivas delivered of a child; and the question submitted for our consideration, is, to whom did the child belong This question cannot now be one of much importance to the parties, since the abolition of slavery, and, as appears from the record, the child has died, unless, perhaps, it may involve an account for hire. It is clear, however, Mrs. Appleberry took, under said clause in her father’s Will, a vested remainder in the slave, and, consequently, would be entitled to her increase, born before the termination of the particular estate.
The next, and only remaining question, is this: It appears that, several years before the death of the tes *128 tator, be became displeased with a family of slaves, and conveyed, or attempted to convey tbem, to bis wife, by a bill of sale, with tbe understanding they should no longer remain on bis place, and bis wife might dispose of tbem to whom she pleased; and in pursuance of this agreement and understanding, several months before tbe death of tbe testator, his said wife, with tbe knowledge and approbation of tbe testator, conveyed three of said slaves, or tbe increase of one of tbem, to testator’s daughter, Sarah Appleberry, who took tbem into possession during tbe lifetime of her husband, who held and claimed tbem as bis own, to tbe time of bis death; and they are afterwards sold by decree' of Court, and tbe proceeds applied to tbe payment of tbe husband’s debts. And tbe question now is, to whom did said three slaves belong? We think tbe conveyance by tbe testator to bis wife, was inoperative to divest tbe testator of title to tbe slaves; but that .the execution of tbe bill of sale, by tbe wife to her daughter, for three of tbe slaves, operated as a gift by tbe father to bis daughter, which was perfected by an adverse possession, which began in tbe lifetime of tbe testator.
Except as indicated in these instructions, tbe decree of tbe Chancellor will be affirmed, and tbe cause remanded to tbe Chancery Court, for the taking of all necessary accounts. Tbe costs of tbe appeal will be divided.